United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

APPLIED ELASTOMERICS, INCORPORATED, a
California corporation,

      Plaintiff,

  v.

Z-MAN FISHING PRODUCTS, INCORPORATED,
a South Carolina corporation,

      Defendant.

_____/

No. C 06-2469 CW

ORDER DENYING
DEFENDANT'S
MOTION TO DISMISS
FOR LACK OF
PERSONAL
JURISDICTION

Defendant Z-Man Fishing Products, Incorporated moves for dismissal of the action against it for lack of personal jurisdiction.  Plaintiff Applied Elastomerics, Incorporated opposes this motion.  The matter was submitted on the papers.  Having considered all of the papers filed by the parties, the Court denies Defendant's motion and finds that Defendant has the necessary minimum contacts to provide this Court with specific jurisdiction over it.

**United States District Court**
For the Northern District of California

BACKGROUND

Plaintiff is a California corporation, located in South San Francisco.  It invents and patents certain chemical compositions, composites and articles made from these compositions and composites.  Many of its patents, such as U.S. Patent No. 5,884,639, "Crystal Gels With Improved Properties," concern gel polymers.  Plaintiff manufactures and sells toys made of the gel polymers it has invented.  In addition, Plaintiff commercializes its technology by licensing its patents, proprietary technology and know-how to third parties and provides consulting services to third parties.  Plaintiff's president is John Chen; he handles all of the business aspects of commercializing the technology he invents and develops.  His wife, Judy Chen, is Plaintiff's secretary and treasurer.  The Chens are Plaintiff's only two employees.

Defendant is a South Carolina corporation.  It develops and manufacturers fishing lure components and fishing lures for major lure manufacturers.  Since Defendant's inception, its operations have been exclusively in South Carolina; it has never been authorized to do business in any State other than South Carolina. Defendant has no bank accounts and owns no property in California. It has never been involved in any litigation in California (other than this action) and has never paid any taxes or other fees at any time to the State of California.  Defendant does not have employees or agents in California.  Nor has Defendant ever engaged in any direct marketing or targeted efforts to sell any of its products in California.  Defendant does not maintain a direct sales force for its products anywhere and does not market its products to the

general public or on a retail basis.  Instead, it sells its products to manufacturers and those manufacturers generally package and label the lures created by Defendant under their respective manufacturers' brand names for sale to retailers.  According to the United States Patent and Trademark Office, Defendant is considered a "large entity."

On April 25, 2001, Mike Shelton, Defendant's Vice-President of Marketing and Sales and Director of Technoloy, from his office in South Carolina, telephoned Mr. Chen, who was at Plaintiff's office in South San Francisco.  Mr. Shelton was leading Defendant's efforts to develop a stronger, softer and more buoyant plastic lure than those on the market at the time; he believed that Plaintiff may have possessed technology that could help develop Defendant's new and improved plastic lure.  Prior to this call Mr. Chen had never heard of Defendant or its product line.

According to the facsimile that Mr. Shelton sent Mr. Chen later that day, Defendant was "interested in obtaining a license agreement" under Plaintiff's U.S. Patent 5,884,639 "for the purpose of manufacturing and sale of fishing lure products."  Chen Dec., Ex. A.  Included in the facsimile was Mr. Shelton's request that he and Myrna Wauhop, who at the time was Defendant's president, schedule a trip to San Francisco to meet with Mr. Chen and discuss the project.  Mr. Chen states that he was surprised by Defendant's request to meet face-to-face in California because he was accustomed to negotiating patent license agreements solely by teleconferencing and through facsimile communications.  The facsimile concluded: "One of the most exciting parts of this

potential relationship is being able to draw upon your vast experience and knowledge.  Also knowing that under the protection of your U.S. patent, the product line will be safe from outside infringement."  <u>Id</u>.

Following the telephone call and facsimile, Mr. Chen sent Mr. Shelton and Ms. Wauhop a confidentiality agreement and a draft patent license agreement.  The first draft of the license agreement, like all the following drafts and the final agreement, contained a choice-of-law clause providing that California law would govern the agreement and a dispute resolution clause requiring the parties to attempt to settle any disputes through negotiations to be held in San Mateo County, California.  From their respective offices, Mr. Shelton and Mr. Chen negotiated by telephone and facsimile some of the terms of the parties' relationship.  There was no negotiation, however, as to the choice-of-law and dispute resolution provisions in the license agreement.

On May 19, 2001, Mr. Shelton and Ms. Wauhop arrived at Plaintiff's office in South San Francisco to meet with Mr. Chen. With Mr. Shelton and Ms. Wauhop was Don Rawlins from Color Technologies, Inc. (CTI), the corporation that would manufacture, and make the molds for, Defendant's fishing lure products.  The topics to be discussed at the meeting, as presented in a facsimile sent to Mr. Chen a few days before the meeting, were: "(1) Marketing potential aspects; (2) Patents; (3) Technical aspects; (4) Royalty Agreements; (5) Licensing agreements."  Chen Dec., Ex. E.

Discussed during the meeting in South San Francisco were

4

various aspects of the potential licensing and business relationship between the parties, including what patents Defendant would license from Plaintiff, royalties Defendant would be required to pay under the license, the fact that Defendant wanted the license to be exclusive and other terms of the license agreement. The parties also discussed Defendant's need to obtain technical assistance and know-how from Plaintiff to manufacture the fishing lures.  At this meeting, Mr. Chen was asked to formulate gels that could be used to make the fishing lures and to send Defendant samples of the gels for evaluation.  Mr. Chen agreed to do so; he also agreed to do conduct tests of the gels at Plaintiff's office and to provide Defendant with instructions as to how to conduct its own tests.  If Defendant found any of these gels to be suitable, Plaintiff and Defendant, assuming they could agree on the terms, would enter into the license agreement to allow Defendant to commercialize the product.  This meeting was the only face-to-face meeting between the parties and the only trip that any representative of Defendant made to California at any time relating to the license agreement or matters at issue in this litigation.

Following the meeting in California, Mr. Chen provided Defendant with several gel samples.  Mr. Shelton then faxed Plaintiff an overview of the sequence of events for the development of the fishing lure product line.  The facsimile stated in part:

Applied Elastomerics, Inc. to provide 2lbs to 5lbs samples of gel compound for testing.

Color Technology, Inc. to mold and test product for evaluation.  Color Tech to work with Applied Elastomerics in the development of product line.

United States District Court

For the Northern District of California

> Before presenting the finished product to industry customers, Z-Man Fishing Products will notify Applied Elastomerics, Inc. as to which formulation will be used for the product line. Applied Elastomerics will notify Z-Man Fishing Products that they can present the product line for commercialization.  All notifications will be in writing.
>
> Z-Man Fishing Products to issue a check for $25,000.00 to Applied Elastomerics.  This check will be held until the signing of the Royalty/License agreement.

Mr. Chen responded that, prior to formulating a two to five pound sample, he would send a second set of small size samples for Defendant's evaluation.  After receiving this set of samples, Defendant ordered five pounds of one of the gel compositions that Mr. Chen had previously sent.  Mr. Chen prepared and shipped the gel to Defendant.

In July, 2001, Plaintiff and Defendant entered into a patent and technology license agreement.  Mr. Chen, on behalf of Plaintiff, executed the agreement on July 18, 2001.  The agreement was then sent to South Carolina.  Mr. Shelton, on behalf of Defendant, executed the agreement six days later.  As noted above, the agreement contains a California choice-of-law clause and a clause requiring the parties to negotiate disputes in California.

Defendant states that for the remainder of 2001, it worked with CTI, specifically Mr. Rawlings, further to develop its new product line.  According to Defendant, it and CTI had "some contact" with Mr. Chen during the development phase of the product line.  The product line, however, was developed at Defendant's facility in South Carolina and CTI's facility in Georgia, where it was initially manufactured; any involvement by Mr. Chen in the development of the fishing lure product line was by way of

United States District Court

For the Northern District of California

communications made over the telephone and facsimiles.

Plaintiff states that, after the license agreement was executed, Defendant and its manufacturing partner CTI continued to seek technical assistance and gel formulations from Plaintiff on an ongoing basis from August, 2001 through at least March, 2003.  Mr. Chen provided new gel samples, new gel formulations, technical advice on how to handle the gels in the manufacturing process, technical advice on how to store the gels, what products to order from suppliers and other technical information and know-how.  In January, 2003, for example, at the request of Defendant and CTI, Plaintiff sent Defendant forty-four and a half pounds of new, improved gel developed and made by Plaintiff in California.  To provide this technical assistance, Mr. Chen telephoned Defendant and CTI more than a hundred times, in addition to the numerous facsimiles and mailings that were exchanged between the parties and the numerous times that Defendant and CTI telephoned Mr. Chen.  Mr. Rawlins declares that, over the course of the development and post-market improvements of the fishing lure product, CTI, on behalf of Defendant, sought Mr. Chen's assistance anywhere from once per week to several times per day.  He states that he spoke with Mr. Chen more than a hundred times and spent at least a hundred hours with Mr. Chen on the phone.  According to Mr. Rawlins: "Without the technical information and know-how, the ongoing technical assistance and trouble shooting, and the gel samples and gel formulation that Z-Man and CTI (on behalf of Z-Man) sought and received from Mr. Chen in California, Z-Man and CTI could not have developed the particular fishing lure product that Z-Man ultimately

marketed."  Rawlins Dec., ¶ 13.

Plaintiff states that, in addition to requesting technical assistance, Defendant sought its assistance with the fishing lure product in other ways.  Defendant requested that Plaintiff apply for additional patents to strengthen Defendant's ability to prevent competitors from copying Defendant's licensed product.  Plaintiff did as requested.  Defendant also asked Plaintiff to assist in determining whether certain of Defendant's competitors' products were infringing Plaintiff's patents.  Defendant sent samples of the potentially infringing product to Plaintiff in California and requested that Plaintiff have the products analyzed for infringement.  Plaintiff again did as requested.

Between June, 2001 and February, 2004, Defendant sent to Plaintiff nine royalty payments owed under the license agreement. Each of these payments was made by check drawn from a South Carolina account maintained by Defendant.  The checks were mailed by Defendant to Plaintiff's office in South Francisco.  Plaintiff claimed that these payments were not sufficient to cover the full amount of minimum royalties due pursuant to the license agreement and, in 2005, the parties disputed what was owed, if anything. Defendant refused to pay the alleged minimum royalties Plaintiff believed were due, and instead attempted to negotiate a new license agreement.  Plaintiff refused to enter into a new agreement and brought this suit for breach of contract and breach of the covenant of good faith and fair dealing.

Defendant contends that it does not have sufficient minimum contacts with California to allow this Court to exercise personal

**United States District Court**
For the Northern District of California

jurisdiction over it and that any assertion of personal jurisdiction is unreasonable.  In May, 2006, it filed this motion. In June, 2006, the day before Plaintiff timely filed its opposition to this motion, Defendant filed a complaint against Plaintiff in the District of South Carolina.  The complaint contains twenty-one claims, including fraud in the inducement, breach of the license agreement for failure to provide formulations within the scope of patent rights licensed under the agreement, breach of the license agreement for failure to maintain exclusivity, misappropriation of trade secrets, tortious interference with contractual relations, conversion and numerous declaratory relief claims.

                              LEGAL STANDARD

     Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to dismiss for lack of personal jurisdiction. The plaintiff then bears the burden of demonstrating that jurisdiction exists.  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).  The plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant."  Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995); Fields v. Sedgwick Assoc. Risks, Ltd., 796 F.2d 299, 301 (9th Cir. 1986).  Uncontroverted allegations in the complaint must be taken as true.  AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996).  However, the court may not assume the truth of such allegations if they are contradicted by affidavit.  Data Disc, Inc. v. Systems Technology Associates, Inc., 557 F.2d 1280, 1284 (9th Cir. 1977).  Conflicts in the evidence must be resolved in the plaintiff's favor.  AT&T, 94 F.3d at 588.

United States District Court

For the Northern District of California

9

United States District Court

For the Northern District of California

If material facts are controverted or if the evidence is inadequate, a court may permit discovery to aid in determining whether personal jurisdiction exists.  Data Disc, 557 F.2d at 1285 n.1.  If the submitted materials raise issues of credibility or disputed questions of fact, the district court has the discretion to hold an evidentiary hearing in order to resolve the contested issues.  Id.

DISCUSSION

There are two independent limitations on a court's power to exercise personal jurisdiction over a non-resident defendant: the applicable State personal jurisdiction rule and constitutional principles of due process.  Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990); Data Disc, 557 F.2d at 1286.  California's jurisdictional statute is co-extensive with federal due process requirements; therefore, jurisdictional inquiries under State law and federal due process standards merge into one analysis.  Rano v. Sipa Press, Inc., 987 F.2d 580, 587 (9th Cir. 1993).

The exercise of jurisdiction over a non-resident defendant violates the protections created by the due process clause unless the defendant has "minimum contacts" with the forum State so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice."  International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  Personal jurisdiction may be either general or specific.

General jurisdiction exists where the defendant's contacts with the forum State are so substantial or continuous and systematic that jurisdiction exists even if the cause of action is

10

**United States District Court**
For the Northern District of California

unrelated to those contacts.  Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000).  The standard for establishing general jurisdiction is "fairly high."  Id.; Brand v. Menlove Dodge, 796 F.2d 1070, 1073 (9th Cir. 1986).  The defendant's contacts must approximate physical presence in the forum State.  Schwarzenegger, 374 F.3d at 801.  Factors considered in evaluating the extent of contacts include whether the defendant makes sales, solicits or engages in business, designates an agent for service of process, holds a license, or is incorporated in the forum State.  Bancroft & Masters, 223 F.3d at 1086.

Specific jurisdiction exists where the cause of action arises out of or relates to the defendant's activities within the forum. Data Disc, 557 F.2d at 1286.  Specific jurisdiction is analyzed using a three-prong test: (1) the non-resident defendant must purposefully direct its activities or consummate some transaction with the forum or a resident thereof; or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable.  Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987).  Each of these conditions is required for asserting jurisdiction.  Insurance Co. of N. Am. v. Marina Salina Cruz, 649 F.2d 1266, 1270 (9th Cir. 1981).

A showing that a defendant "purposefully availed" itself of the privilege of doing business in a forum State typically consists of evidence of the defendant's actions in the forum, such as

United States District Court

For the Northern District of California

executing or performing a contract there.  Schwarzenegger, 374 F.3d
at 802.  The requirement of purposeful availment ensures that the
defendant should reasonably anticipate being haled into the forum
State court based on its contacts.  World-Wide Volkswagen Corp. v.
Woodson, 444 U.S. 286, 297 (1980).  The purposeful availment test
is met where "the defendant has taken deliberate action within the
forum state or if he has created continuing obligations to forum
residents."  Ballard, 65 F.3d at 1498.

The second factor requires that the claim arise out of or
result from the defendant's forum-related activities.  A claim
arises out of a defendant's conduct if the claim would not have
arisen "but for" the defendant's forum-related contacts.
Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1322 (9th Cir.
1998).

Once the plaintiff has satisfied the first two factors, the
defendant bears the burden of overcoming a presumption that
jurisdiction is reasonable by presenting a compelling case that
specific jurisdiction would be unreasonable.  Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 472-73 (1985); Haisten v. Grass Valley
Medical Fund, Ltd., 784 F.2d 1392, 1397 (9th Cir. 1986).  Seven
factors are considered in assessing whether the exercise of
jurisdiction over a non-resident defendant is reasonable: (1) the
extent of the defendant's purposeful interjection into the forum
State's affairs, (2) the burden on the defendant, (3) conflicts of
law between the forum State and the defendant's home jurisdiction,
(4) the forum State's interest in adjudicating the dispute, (5) the
most efficient judicial resolution of the dispute, (6) the

12

plaintiff's interest in convenient and effective relief, and
(7) the existence of an alternative forum.  Caruth v. International
Psychoanalytical Ass'n, 59 F.3d 126, 128 (9th Cir. 1995); Roth v.
Garcia Marquez, 942 F.2d 617, 623 (9th Cir. 1991).

Plaintiff argues that it has made a prima facie case that this
Court has specific jurisdiction over Defendant.  Defendant
disagrees, maintaining that it has not purposefully availed itself
of the privilege of conducting activities within California, thus
invoking any benefits and protections of California law, and
therefore does not have sufficient minimum contacts with California
for this Court to exercise jurisdiction over it.

(1)  Purposeful Availment

The first factor used to determine whether specific personal
jurisdiction is proper is whether the defendant purposefully
availed itself of the benefits and protections of the laws of the
forum State.  See Schwarzenegger, 374 F.3d at 802 (noting that the
purposeful availment analysis is most often used in suits sounding
in contract).  Defendant contends that it did not purposefully
avail itself of the privilege of conducting activities in
California.  According to Defendant, all it did was contact
Plaintiff to discuss a potential relationship, visit Plaintiff once
in California, enter into a contract with Plaintiff that Defendant
executed in South Carolina, occasionally talk with Mr. Chen about
the product line that was being developed and manufactured on the
east coast, and send checks from South Carolina to Plaintiff's
office in California.  Defendant acknowledges that the license
agreement has a California choice-of-law provision, but downplays

United States District Court
For the Northern District of California

the significance of that provision.  Defendant's attempt to downplay that provision and its deliberate actions within California by which it availed itself of the benefits and protection of California laws, however, fails.

As Plaintiff correctly notes, courts have found purposeful availment based on contacts similar to Defendant's contacts with California.  For example, in <u>Gates Learjet Corp. v. Jensen</u>, 743 F.2d 1325, 1331 (9th Cir. 1984), the Ninth Circuit held that the defendant purposefully availed itself of the benefits and protections of Arizona law when it solicited a distributorship agreement in Arizona and the agreement specifically provided that Arizona law governed it.[1]  Similarly, in <u>Advideo v. Kimel Broadcast Group, Inc.</u>, 727 F. Supp. 1337 (N.D. Cal. 1989), the court found that the defendant's contacts with California were limited to the negotiation and signing of a single contract with the plaintiff, a California corporation.  The court then explained:

> The mere signing of a contract with an out-of-state party does not confer jurisdiction in that party's home state.  However, the contract signed by defendant expressly stated that legal disputes arising from the contract would be resolved in accordance with California law.  Although a governing law provision standing alone is not sufficient to confer jurisdiction, the Supreme Court has ruled that "a choice-of-law provision should [not] be ignored in considering whether a defendant has 'purposefully invoked the benefits and protections of a State's laws' for jurisdictional purposes."
>
> This Court is of the opinion that defendant purposefully availed itself of the benefits and protections of California's laws.  Defendant knew it was transacting business with a

_____

[1]Defendant's suggestion that <u>Gates Learjet</u> may no longer be good law because it predates <u>Burger King</u> is without merit.  In <u>Burger King</u>, the Supreme Court found that a choice-of-law provision standing alone would be insufficient to confer jurisdiction.  471 U.S. at 482.  <u>Gates Learjet</u> does not hold otherwise.

14

California corporation. . . . Defendant negotiated the modification of other terms in the contract that plaintiff initially proposed.  In the event plaintiff had in some manner breached the agreement, defendant would have been entitled to the protection and benefits afforded by California law.  Based on defendant's deliberate affiliation with California, the negotiations it conducted with plaintiff regarding the contractual terms, and the clearly stated governing law provision in the final contract, defendant had reason to anticipate being haled into court in California.  Accordingly, this Court finds that defendant purposefully availed itself of the privilege of conducting business in California, thereby invoking the benefits and protections of its laws.

727 F. Supp at 1340-41 (citations omitted).

Defendant's contacts with California are not "random," "fortuitous," or "attenuated" or based on the "unilateral activity of another party or a third person." Burger King, 471 U.S. at 575. As established above, and as Defendant concedes, Defendant was the one who reached out to California to contact Plaintiff regarding a business arrangement.  Defendant requested a face-to-face meeting and Defendant traveled to California, where the parties negotiated the terms of the license agreement.  See Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 840 (9th Cir. 1986) ("conducting contract negotiations in the forum state will probably qualify as an invocation of the forum law's benefits and protections"); Data Disc, 557 F.2d at 1287 ("By participating in the contract negotiations in California, STA purposefully availed itself of the privilege of carrying out activities in that state.").  Defendant then entered into a license agreement, with California choice-of-law and California dispute resolution provisions, with a company based only in California, without attempting to modify the choice-of-law and dispute resolution provisions.  By entering into that agreement, Defendant created

15

United States District Court

For the Northern District of California

continuing obligations between the parties, knowing that many of those obligations could only be carried out by Plaintiff in California.

Purposeful availment requires a finding that the defendant performed some type of affirmative conduct which allows or promotes the transaction of business within the forum State. <u>Doe v. Unocal Corp.</u>, 248 F.3d 915, 923 (9th Cir. 2001). The Court makes that finding and concludes that Defendant purposefully availed itself of the laws and benefits of California's law and thus it should have reasonably anticipated being haled into court here.

(2)   Arising Out Of

The second factor addresses whether the claim arises out of or results from the defendant's forum-related activities. Applying the <u>Panavision</u> "but-for" test, the question, therefore, is this: but for Defendant's contacts with California, would Plaintiff's claims have arisen?

The answer is no. If Defendant had not contacted Plaintiff and had not negotiated and entered into the license agreement at issue, Plaintiff would have no breach of contract claims against Defendant. Defendant does not argue otherwise. Defendant's forum-related activities gave rise to each of Plaintiff's claims.

(3) Reasonableness

The third and final factor that the Court must consider is whether exercising jurisdiction over Defendant is reasonable and fair. Because the first two prongs of the specific jurisdiction test have been met, Defendant must overcome the presumption of reasonableness by presenting a compelling case that the exercise of

16

**United States District Court**

For the Northern District of California

jurisdiction would not be reasonable.  Defendant contends that it presents such a case; it addresses each of the seven factors mentioned above.

(a) Reasonableness factors

(i)  Purposeful injection

The Ninth Circuit instructs, "Even if there is sufficient 'interjection' into the state to satisfy the purposeful availment prong, the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the reasonableness prong." <u>Panavision</u>, 141 F.3d at 1323 (quoting <u>Core-Vent v. Nobel Indus. AB</u>, 11 F.3d 1482, 1488 (9th Cir. 1993)).

Defendant contends that, given the paucity of evidence to show even purposeful availment by Defendant, there is insufficient evidence to show that Defendant purposefully injected itself into California such that it should have reasonably expected to have to defend itself here.  But the Court did not find that there was a paucity of evidence to show purposeful availment.  Nor did the Court find that there is insufficient evidence to show that Defendant should have reasonably expected to have to defend itself in California.  As noted above, the license agreement provides that, in the event of a dispute, the parties would attempt to negotiate a settlement of the dispute in California.  If it was Plaintiff's preference to negotiate disputes in California, Defendant reasonably should have expected that Plaintiff would litigate disputes in California.

By seeking out Plaintiff, traveling to California to negotiate the terms of the business relationship and license agreement with

17

United States District Court

For the Northern District of California

Plaintiff, and requiring Plaintiff to perform contractual

obligations in California, Defendant purposefully injected itself

into California affairs.  Thus, this factor weighs in favor of

finding that jurisdiction over Defendant is reasonable.

(ii) Burden on Defendant of Litigating in California

Although Defendant's burden of litigating in California is a

factor in the assessment of reasonableness, the Ninth Circuit

instructs that, unless the "inconvenience is so great as to

constitute a deprivation of due process, it will not overcome clear

justifications for the exercise of jurisdiction." Id. (quoting

Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d 126, 128-29 (9th

Cir. 1995)).

Defendant admits that the burden of litigating this case in

California, while substantial, is not insurmountable.  It notes

that Mr. Chen is the only potential witness living in California;

all Defendant's potential witnesses live on the east coast.

Regardless, Defendant would not be deprived of due process by

having to litigate in California.  The Court concludes that this

factor is neutral.

(iii) Conflicts of law/Sovereignty

This factor requires the Court to consider the extent to which

the exercise of jurisdiction in California would conflict with the

sovereignty of South Carolina, Defendant's state of domicile.

Defendant acknowledges that such a conflict is not a concern in

this case.  Thus, this factor is also neutral.

(iv) Forum State's interest

Defendant argues that, because a California resident was not

18

injured by the tortious conduct of an out-of-State party,
California has no real interest in this litigation and this factor
is, at best, neutral.  This argument is not persuasive.  As another
court in this district has found, "California has a strong interest
in seeing that its residents are provided an effective means of
redress when deprived of the benefits of their contractual
bargains." Advideo, 727 F. Supp. at 1341.  The Court concludes
that this factor weighs in favor of finding that jurisdiction over
Defendant is reasonable.

(v)  Most efficient judicial resolution

In Panavision, the Ninth Circuit noted that this factor, which
focuses on the location of evidence and witnesses, is no longer
weighed heavily given the modern advances in communication and
transportation.  141 F.3d at 1323.  When a case involves a limited
amount of evidence and few potential witnesses, this factor is
"probably neutral." Id.  Plaintiff contends that this is a case
where this factor is neutral.  According to Plaintiff, this is a
simple breach of contract case; the complaint contains only two
causes of action.  Defendants, however, contend that this is not a
simple case and point to their recent South Carolina lawsuit,
which, as noted above, contains over twenty claims for relief.
Defendant's claims, however, are not currently before this Court.
Nonetheless, even if this case remains a breach of contract case,
as noted above, all of Defendant's witnesses are on the east coast.
The Court finds that this factor weighs slightly in favor of
Defendant.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

(vi)  Plaintiff's interest in convenient and effective relief

The Ninth Circuit has noted that, in evaluating the convenience and effectiveness of relief for the plaintiff, it has "given little weight to the plaintiff's inconvenience." Panavision, 141 F.3d at 1323.  But courts have not simply ignored the plaintiff's inconvenience.  See Colt Studio, Inc. v. Badpuppy Enterprise, 75 F. Supp. 2d 1104, 1111 (C.D. Cal. 1999) ("the importance of the forum to the plaintiff's interest in convenient and effective relief is apparent in this case, as plaintiff is a California resident").  Here, Plaintiff is a small company; Defendant is not.  Any time Mr. Chen has to be outside of California to litigate this case would be a burden on Plaintiff. The Court finds that this factor weighs slightly in favor of Plaintiff.

(vii) Existence of an alternative forum

Plaintiff concedes that South Carolina is an alternative forum for this case and that this factor weighs in favor of Defendant. But, as the Ninth Circuit instructs, "No factor is dispositive; a court must balance all seven."  Panavision, 141 F.3d at 1322.

(b) Balancing of the reasonableness factors

Balancing these factors, the Court concludes that, although some factors weigh in Defendant's favor, Defendant has failed to present a compelling case that the Court's exercise of jurisdiction would be unreasonable.  All of the requirements for the exercise of specific, personal jurisdiction are satisfied.  Because the Court finds that specific jurisdiction is appropriate, it does not

address general jurisdiction.

CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 7).

IT IS SO ORDERED.


Dated: 8/10/06

_____
CLAUDIA WILKEN
United States District Judge