IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLIED ELASTOMERICS, INCORPORATED, a California corporation,<br><br>   Plaintiff,<br><br>   v.<br><br>Z-MAN FISHING PRODUCTS, INCORPORATED, a South Carolina corporation,<br><br>   Defendant.<br>_____/ | No. C 06-2469 CW<br><br>ORDER DENYING DEFENDANT'S MOTION TO TRANSFER VENUE |

Defendant Z-Man Fishing Products, Incorporated moves for a transfer of venue to the District of South Carolina. Plaintiff Applied Elastomerics, Incorporated opposes this motion. The matter was decided on the papers. Having considered all of the papers filed by the parties, the Court denies Defendant's motion to transfer venue.

BACKGROUND

As explained in the Court's prior order denying Defendant's motion to dismiss for lack of personal jurisdiction, Plaintiff is a

California corporation, located in South San Francisco.  It invents and patents certain chemical compositions, composites and articles made from these compositions and composites.  Many of its patents concern gel polymers.  Plaintiff commercializes its technology by licensing its patents, proprietary technology and know-how to third parties and provides consulting services to third parties. Plaintiff's president, John Chen, handles all of the business aspects of commercializing the technology he invents and develops. Mr. Chen's wife, Judy Chen, is Plaintiff's secretary and treasurer. The Chens are Plaintiff's only two employees.

Defendant is a South Carolina corporation.  It develops and manufactures fishing lure components and fishing lures for major lure manufacturers.  Since Defendant's inception, its operations have been exclusively in South Carolina.  Defendant has twenty-one employees, none of whom reside in California.[1]

In July, 2001, Plaintiff and Defendant entered into a patent and technology license agreement.  Mr. Chen, on behalf of Plaintiff, executed the agreement on July 18, 2001, in California. The agreement was then sent to South Carolina.  Mike Shelton, on behalf of Defendant, executed the agreement six days later.

Between June, 2001 and February, 2004, Defendant sent to Plaintiff royalty payments owed under the license agreement. Plaintiff claimed that these payments were not sufficient to cover the full amount of minimum royalties due pursuant to the license agreement.  On April 7, 2006, Plaintiff brought this suit for

---

[1] The factual background of this case is described in the Court's August 10, 2006 order.

2

breach of contract and breach of the covenant of good faith and fair dealing.

Defendant filed a motion to dismiss, contending that it does not have sufficient minimum contacts with California to allow this Court to exercise personal jurisdiction over it.  On July 13, 2006, the day before Plaintiff timely filed its opposition to the motion, Defendant filed a complaint against Plaintiff in the District of South Carolina.  The complaint contains twenty-one claims, including fraud, breach of the license agreement, misappropriation of trade secrets, tortious interference with contractual relations, conversion and numerous declaratory relief claims.

On August 10, 2006, the Court denied Defendant's motion to dismiss, finding that Defendant had the necessary minimum contacts to provide this Court with specific jurisdiction over it. Defendant then filed its answer and twelve counterclaims, all of which are also alleged in the complaint Defendant filed in South Carolina.  Defendant's twelve causes of action are (1) breach of the license agreement for failure to provide formulations covered by Plaintiff's patent rights; (2) breach of the license agreement for failure to maintain exclusivity; (3) breach of the covenant of good faith and fair dealing; (4) fraud in the inducement; (5) negligent misrepresentations; (6) fraud in the execution; (7) declaratory judgment of no breach of contract by Defendant, due to lack of consideration resulting from Plaintiff's failure to provide Defendant with a formula within the scope of Plaintiff's patent rights and/or that worked for its intended purpose; (8) declaratory judgment of no breach of contract by Defendant, due

3

to lack of consideration resulting from Plaintiff's failure to maintain exclusivity; (9) declaratory judgment of no breach of contract by Defendant because Defendant's performance under the license agreement is excused by Plaintiff's prior material breach of the license agreement in failing to provide Defendant with a formula within Plaintiff's patent rights and/or that was appropriate for its intended use; (10) declaratory judgment of no breach of contract by Defendant because Defendant's performance under the license agreement is excused by Plaintiff's prior material breach of the license agreement in failing to maintain exclusivity; (11) declaratory judgment of no breach of contract by Defendant for failure to pay royalties because of non-infringement; and (12) restitution for unjust enrichment.

Defendant now requests that the Court transfer this case to the federal district court in South Carolina, where it can be consolidated with the case Defendant brought there. After Defendant filed its motion to transfer, Plaintiff filed a motion to dismiss ten of Defendant's counterclaims, which is scheduled to be heard on November 3, 2006. Plaintiff has also filed in the District of South Carolina a motion to stay, dismiss or transfer venue.

## DISCUSSION

Title 28 U.S.C. § 1404(a) provides as follows: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Plaintiff concedes that this action could have been brought in the District of South

4

Carolina. Thus, the Court need only consider the convenience of the parties and witnesses and the interest of justice.

The statute identifies three basic factors for district courts to consider in determining whether a case should be transferred: (1) convenience of the parties; (2) convenience of the witnesses; and (3) the interests of justice. 28 U.S.C. § 1404(a). The Ninth Circuit provides other factors the court may consider: ease of access to the evidence; familiarity of each forum with the applicable law; feasability of consolidation of other claims; any local interest in the controversy; relative court congestion and time of trial in each forum; location where the relevant agreements were negotiated and executed; the parties' contacts with forum; difference in the costs of litigation in the two forums; and availability of compulsory process to compel attendance of unwilling non-party witnesses. Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986); Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000). Another factor the Ninth Circuit has identified is the plaintiff's choice of forum. See Securities Investor Protection Corp. v. Vigman, 764 F.2d 1309, 1317 (9th Cir. 1985). The Securities Investor court held that, unless the balance of the § 1404(a) factors "is strongly in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed." Id.; see also Decker Coal, 805 F.2d at 843 ("defendant must make a strong showing . . . to warrant upsetting the plaintiff's choice of forum").

The burden is on the defendant to show that the convenience of parties and witnesses and the interest of justice require transfer

5

to another district. See Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979). Defendant contends that it has met its burden and thus this case should be transferred to the District of South Carolina. Plaintiff disagrees.

I.  Plaintiff's Choice of Forum

As noted above, there is a strong presumption in favor of a plaintiff's choice of forum. There are situations, however, where a plaintiff's choice of forum is accorded little weight. See, e.g., Pacific Car & Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir. 1968) ("If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration."). Defendant contends that Plaintiff's choice of forum is entitled to minimal deference because the "center of gravity" of this case is in South Carolina, not the Northern District of California.

Some courts in this district, and others, have applied the "center of gravity" test. See, e.g., Teknekron Software Systems, Inc. v. Cornell Univ., 1993 WL 215024, *7 (N.D. Cal. 1993) (finding that because the action's center of gravity was in New York, where the allegedly infringing products were designed and where almost all the allegedly infringing activity occurred, the plaintiff's choice of forum was only entitled to limited deference). The Ninth Circuit, however, has not. Defendant's reliance on Pacific Car is unavailing. Pacific Car provides that the plaintiff's choice of forum is entitled to minimal consideration if the operative facts did not occur within the plaintiff's chosen forum and if the chosen

forum has no particular interest in the parties or the subject matter. Here, as discussed in the Court's August 10, 2006 order, the operative events occurred in this district as well as in South Carolina. Plaintiff is a California corporation located in this district. California has an interest in litigation concerning its residents, especially in a situation, such as this case, where the agreement at issue contains California choice-of-law and California dispute resolution provisions.

Like Pacific Car, Williams v. Bowman, 157 F. Supp. 2d 1103 (N.D. Cal. 2001), another case Defendant cites in support of its argument that Plaintiff's choice deserves little deference, bolsters Plaintiff's position, not Defendant's. The court in Williams stated that deference to a plaintiff's chosen forum is substantially reduced "where the plaintiff does not reside in the venue or where the forum lacks a significant connection to the activities alleged in the complaint." Id. at 1106. Here, as discussed above, Plaintiff resides in the Northern District of California, and this district has a significant connection to the activities alleged both in Plaintiff's complaint and Defendant's counterclaims. Indeed, all action, or inaction, by Plaintiff of which Defendant complains occurred in this district. Thus, even if, as Defendant contends, Plaintiff's complaint addresses only a small portion of the total dispute between the parties, this district maintains a significant connection based on the allegations in Defendant's counterclaims.

Therefore, the Court concludes that Plaintiff's choice of forum merits substantial deference.

II.  Remaining Factors

Defendant contends that, even if the Court concludes that Plaintiff's choice of forum is entitled to substantial weight, the balance of the other factors strongly outweighs any weight given to Plaintiff's choice of forum.

A. Convenience of the parties

It will be inconvenient for Defendant to litigate this matter in this district.  Defendant notes that it has experienced severe financial difficulties.  It provides the Court with its financial information in terms of sales and profit for a number of years.[2] Defendant has been trying to work its way out of a financial hole that it claims resulted from its relationship with Plaintiff.  It states that it would disrupt its business if its management, approximately one-third of its total work force, were forced at the same time to be out of the office and in California.

But it would also be inconvenient for Plaintiff to litigate this matter in South Carolina.  Plaintiff notes that it has one employee, Mr. Chen, who runs its day-to day-affairs.  Therefore, while the temporary absence of a core group of Defendant's employees would leave other employees to manage daily operations, Mr. Chen's absence would leave only Mrs. Chen, who has no significant responsibility for the day-to-day workings of the

---

[2] As Defendant notes, Plaintiff brought this action against Defendant, not InterTech Group or billionaire Jerry Zucker; thus, the Court does not consider the financial standing of InterTech Group or Mr. Zucker.  See Everest Capital Ltd. v. Everest Funds Management, LLC, 178 F. Supp. 2d 459, 468 (S.D.N.Y. 2002) (noting that, in determining the parties' financial resources, the court would not speculate as to the possible use of personal or third-party resources).

8

business. Plaintiff notes that, in both 2004 and 2005, it operated at a net loss; it expects its annual income to be negative for 2006 as well.

Although Plaintiff may be slightly less inconvenienced by having to litigate this case in South Carolina than Defendant would be by having to litigate it in California, Plaintiff would still be inconvenienced, a fact Defendant does not deny. To transfer this case to the District of South Carolina would simply be transferring the inconvenience of one party to the other party. See STX, Inc. v. Trik Stik, Inc., 708 F. Supp. 1551, 1556 (N.D. Cal. 1988) ("If the gain to convenience to one party is offset by the added inconvenience to the other, the courts have denied transfer of the action."). Thus, this factor does not weigh in favor of transfer.

B. Convenience of the witness

The convenience of witnesses is often the most important factor in deciding whether to transfer an action. Bunker v. Union Pacific Railroad Co., 2006 WL 193856, *2 (N.D. Cal. 2006). The parties identify twenty-five witnesses. Only two of those witnesses reside in California: Mr. Chen and Dr. Marianna F. Asaro, a scientist knowledgeable concerning the testing done on behalf of Plaintiff on potentially infringing products in the fishing lure field. The remaining witnesses are seven current employees of Defendant located in South Carolina; seven third-party witnesses located in South Carolina; and nine third-party witnesses located outside of South Carolina in Oklahoma, Texas, Louisiana, Ohio, Illinois, North Carolina, Tennessee and Georgia.

Plaintiff contends that litigating in South Carolina would be

9

burdensome for its key witness, Mr. Chen, for the reasons discussed above and because Mr. Chen's doctor recommended that, to protect his hearing, he should avoid high and low frequency sounds, including those made by airplane engines. Mr. Chen also states that he has been reluctant to fly since September 11, 2001. But, as Defendant notes, he admits that in the last five years he has made two trips that involved flying to his destination. Defendant contends that it would be inconvenient for its key witness and client representative, Mr. Shelton, to testify in California. Mr. Shelton states that, due to a back condition, his doctor has restricted him from sitting for longer than two hours at a time.[3] These problems appear to be in equipoise. The Court, however, discounts any inconvenience to the parties' other employees, whom the parties can compel to testify. STX, 708 F. Supp. at 1556 (discounting inconvenience to party's witnesses when they are employees who can be compelled to testify).

There is only one non-party witnesses in this district. Plaintiff does not state whether Dr. Asaro would be willing to testify in South Carolina. There are sixteen non-party witnesses residing in South Carolina or another State close to South Carolina. All of these witnesses may not testify at trial. Nonetheless, the majority of non-party witnesses reside in South Carolina or a State close to South Carolina.

---

[3] Plaintiff objects to the declarations, including Mr. Shelton's, that were filed with Defendant's reply. It correctly notes that new evidence should not be introduced on reply. Nonetheless, the Court has considered these declaration in denying Defendant's motion to transfer.

10

Thus, the Court finds that the convenience of witnesses weighs in favor of transfer.

C. Availability of compulsory process

As noted above, there is only one non-party witness located in this district, but there are seven non-party witnesses located in South Carolina. Plaintiff argues that this factor still does not weigh in favor of transfer because the third-party witnesses probably would testify willingly. Two of those witnesses, however, have stated that they would prefer to have no involvement with this case and that they will not come to California to testify. For example, Ms. Wauhop, Defendant's former president who had interactions with Mr. Chen before she retired, states that she has no intention of voluntarily testifying and that she would not travel to California because, among other reasons, she is the sole caregiver of her ninety-three old mother, whom she will not leave for any extended period of time. If this case were transferred to South Carolina, the court there could compel those two witnesses, and the other five non-party witnesses, if necessary, by way of the court's subpoena power. Another court in this district has noted that "live testimony is preferable to depositions." Geo. F. Martin Co. v. Royal Ins. Co. of Am., 2004 WL 1125048, *3 (N.D. Cal. 2004). And, like in Geo. F. Martin, "transfer of this action would allow for live testimony of important witnesses."

Thus, the Court finds that this factor too weighs in favor of transfer.

D. Access to evidence

Physical and documentary evidence is located both in this

11

district and in District of South Carolina.  As Defendant acknowledges in its reply, this factor is neutral.

Thus, the Court finds that this factor does not weigh in favor of transfer.

E.  Familiarity of each forum with the applicable law

The license agreement provides that disputes arising out of or related to the agreement shall be governed by California law, unless the dispute concerns a patent.  Any dispute concerning a patent shall be determined by the law of the country in which the patent was granted.

Defendant argues that this factor does not weigh against transfer because the District of South Carolina is equally capable of adjudicating patent law issues and breach of contract issues involving California law.[4]  This factor, however, does not ask whether a court is equally capable, rather it focuses on the familiarity of each forum with the applicable law.  Defendant does not dispute that a court in the Northern District of California is more familiar with California law.

Thus, the Court finds that this factor weighs against transfer.

F.  Feasability of consolidation of other claims

At least one district court in the Ninth Circuit has noted, "The feasibility of consolidation is a significant factor in

---

[4] Defendant relies on Woodward v. Seghers, 2006 WL 2130745 (N.D. Cal. 2006).  Although not noted by Plaintiff, the order states that it is not designated for publication and may not be cited.

12

deciding a transfer motion."  Cambridge Filter Corp. v. Int'l Filter Co., Inc., 548 F. Supp. 1308, 1312 (D. Nev. 1982); see also A.J. Industries, Inc. v. U.S. Dist. Ct., 503 F.2d 384, 389 (9th Cir. 1974).  Defendant contends that, because this case can be consolidated with the South Carolina case, this factor heavily favors transfer.  But, in its moving papers, it fails to note that the South Carolina case could also be consolidated with this case.  Furthermore, as Plaintiff points out, this action was filed more than three months earlier than Defendant's action in South Carolina.  The Ninth Circuit instructs that the first-to-file rule promotes efficiency and "'should not be disregarded lightly.'" Alltrade, Inc. v. Uniweld Products, Inc., 946 F.2d 622, 625 (9th Cir. 1991) (quoting Church of Scientology v. United States Dep't of the Army, 611 F.2d 738, 750 (9th Cir. 1979)); see also Manuel v. Convergys Corp., 430 F.3d 1132, 1135 (11th Cir. 2005) ("Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule.").

Thus, the Court finds that this factor weighs against transfer.

G.  Local interest in the controversy

Both California and South Carolina have an interest in this action.  As the Court held in its prior order, California has a strong interest in seeing that its residents are provided an effective means of redress when deprived of the benefits of their contractual bargain.  South Carolina has the same interest.  This

13

factor is neutral.  See Royal Queentex Enterprises v. Sara Lee Corp., 2000 WL 246599, *8 (N.D. Cal. 2000) (finding that when both forums have a significant interest, this factor does not weigh in favor of transfer).

Thus, the Court finds that this factor does not weigh in favor of transfer.

H.  Parties' contacts with forum

Both parties had contacts with both forums.  Neither party's contacts are substantially more extensive then the other party's. This factor is also neutral.  The Court finds that this factor does not weigh in favor of transfer.

I.  Relative court congestion and time of trial in each forum

Defendant notes that, for the year ending on September 30, 2005, there were 396 pending actions per judge in the District of South Carolina compared to 468 pending actions per judge in this district.  See Creason Decl., Ex. C.  The median time from filing to trial during that period was twenty-two months in the District of South Carolina and twenty-eight months in this district.  Id.

Plaintiff does not dispute that this district is more congested than the District of South Carolina or that, as a whole, cases go to trial more quickly in the District of South Carolina than in this district.  Rather, Plaintiff points out that "these kinds of considerations should play a role in venue shifting analysis only if the backlogs in the two courts are so totally disproportionate that it is obvious that time to trial would be radically longer in the court initially selected by plaintiff." Linear Tech. Corp. v. Analog Devices, Inc., 1995 WL 225672, *4

14

(N.D. Cal. 1995) (stating that the "plaintiff's choice of forum should be displaced by a court's perception about speed of access to trial in another jurisdiction only in the most extraordinary circumstances").

Here, the backlogs are not totally disproportionate. Six additional months' wait before going to trial is not radically longer. Thus, the Court finds that this factor does not weigh in favor of transfer.

J.  Location where the agreement was negotiated and executed

As noted above, Mr. Chen signed, on behalf of Plaintiff, the license agreement in this district. The agreement was then sent to South Carolina where it was signed, on behalf of Defendant, by Mr. Shelton. The agreement was negotiated in California and South Carolina. Thus, the Court finds that this factor does not weigh in favor of transfer.

K.  Difference in the costs of litigation in the two forums

Defendant notes that litigation in this district would be more expensive than litigation in the District of South Carolina due to the cost of arranging for the attendance of willing witnesses. As discussed above, only Dr. Asaro and Mr. Chen are located in this district. But, as Plaintiff points out, the cost of witness travel is likely to be a negligible expense compared with the expense of legal fees. Nonetheless, the Court finds that this factor weighs slightly in favor of transfer.

III. Balancing of Factors

Two factors weigh in favor of transfer; one factor weighs slightly in favor of transfer. But the majority of the factors do

15

not weigh in favor of transfer; indeed, two factors weigh against transfer.  Defendant fails to meet its burden of establishing that the balance of inconveniences weighs heavily in favor of transfer to the District of South Carolina.  As noted above, Plaintiff's choice of forum merits substantial deference.  Because the balance of the section 1404 factors does not weigh strongly in favor of Defendants, Plaintiff's choice of forum will not be disturbed.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Transfer Venue (Docket No. 28) is DENIED.[5]

IT IS SO ORDERED.

Dated: 10/6/06



CLAUDIA WILKEN
United States District Judge

---

[5] Defendant's request for judicial notice (Docket No. 29), however, is GRANTED.

16