United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLIED ELASTOMERICS, INCORPORATED, a California corporation,<br><br>    Plaintiff/Counter-Defendant,<br><br>  v.<br><br>Z-MAN FISHING PRODUCTS, INCORPORATED, a South Carolina corporation,<br><br>    Defendant/Counter-Complainant.<br>_____/ | No. C 06-2469 CW<br><br>ORDER GRANTING IN PART PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTER-CLAIMS AND DENYING IT IN PART |

Plaintiff Applied Elastomerics, Incorporated (AEI) has filed a motion to dismiss ten of the twelve counter-claims filed by Defendant and Counter-Complainant Z-Man Fishing Products, Incorporated.  (Docket No. 40.)  Plaintiff moves to dismiss the first counter-claim for breach of the license agreement for failure to provide formulas covered by Plaintiff's patent rights, the second counter-claim for breach of the license agreement for failure to maintain exclusivity, the fourth counter-claim

for fraudulent inducement, the fifth counter-claim for negligent misrepresentations, the sixth counter-claim for fraud in the execution, the seventh counter-claim for declaratory judgment of no breach of contract by Defendant, due to lack of consideration resulting from Plaintiff's failure to provide Defendant with a formula within the scope of Plaintiff's patent rights or that worked for its intended purpose, the eighth counter-claim for declaratory judgment of no breach of contract by Defendant, due to lack of consideration resulting from Plaintiff's failure to maintain exclusivity, the ninth counter-claim for declaratory judgment of no breach of contract by Defendant because Defendant's performance under the license agreement is excused by Plaintiff's prior material breach of the license agreement by failing to provide Defendant with a formula within Plaintiff's patent rights or that was appropriate for its intended use, the tenth counter-claim for declaratory judgment of no breach of contract by Defendant because Defendant's performance under the license agreement is excused by Plaintiff's prior material breach of the license agreement by failing to maintain exclusivity, and the twelfth counter-claim for restitution for unjust enrichment pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). Defendant opposes this motion. The matter was heard on November 3, 2006. Having considered all of the papers filed by the parties and oral argument on the motion, the Court GRANTS Plaintiff's motion in part and DENIES it in part.

BACKGROUND

The following facts are taken from Defendant's Counter-

2

1  Complaint and Exhibit A, the Patent License Agreement (the
2  Agreement).  Plaintiff develops and distributes products containing
3  gel composites, particularly gel toys.  Defendant develops and
4  manufactures fishing lure components and fishing lures for major
5  lure manufacturers.  Defendant has been known for its original
6  development and manufacture of silicone skirts for lures.

7  For many years prior to 2001, Mike Shelton, Defendant's Vice
8  President of Marketing and Sales and Director of Technology, had
9  been leading efforts to develop improved plastic lures for
10 Defendant.  In doing so, he conducted extensive polymer research
11 and testing.

12 In July, 2001, Plaintiff and Defendant executed the Agreement.
13 The Agreement recites that Plaintiff owns and has rights to license
14 certain "Patent Rights."  (Agreement, Recitals.)  Patent Rights are
15 defined in the Agreement as "the United States and international
16 patents listed on Schedule A . . . ."  Schedule A lists four United
17 States patents owned by Plaintiff.  (Agreement, Schedule A.)

18 In the Agreement, Plaintiff grants Defendant "a nonexclusive,
19 royalty-bearing license under its rights in the Patent Rights, to
20 the extent not prohibited by other patents, to develop, make, have
21 made, use, offer to sell, sell, lease, export and import Licensed
22 Products . . . ."  (Agreement, § 2.1(a).)  Licensed Products are
23 defined as

> one or more fishing lure products . . . which is
> developed, manufactured, . . . or purchased from a third
> party for marketing by [Defendant] under [Defendant's]
> specifications and trademarks . . . as listed by product
> item number, described, defined, and with the designation
> of the type of gel composition used on Schedule B . . .
> that cannot be manufactured made, used, offered for sale,

3

> leased or sold, in whole or in part, without infringing one or more of the Patent Rights.

(Agreement, § 1.3.)  Schedule B lists one product, a fishing lure made from SEEPS gel.  (Agreement, Schedule B.)

The Agreement also grants Defendant a "nonexclusive license to use AEI Technology in connection with the manufacture, use, and sale of Licensed Products."  (Agreement, § 2.1(b).)  AEI Technology is defined as "materials, any information relating to manufacturing techniques, know-how, processes, developments, experimental works, works in progress, trade secrets, or any other matter relating to the business of [Plaintiff] or developed by [Plaintiff] . . . related to Licensed Product(s)."  (Agreement, § 1.13.)

In partial consideration for this grant of rights, Defendant was obliged under the Agreement to pay running royalties based on its revenue from sales of Licensed Products.  (Agreement, § 4.2.) Defendant was also obliged to pay Plaintiff minimum royalties each calendar quarter.  (Agreement, § 4.6(a).)

Regarding infringement of the Patent Rights, the Agreement provides that Defendant "shall have the right, under its own control and at its own expense, to prosecute any third party infringement of the Patent Rights . . . . "  (Agreement, § 7.2.) The Agreement also provides that Plaintiff "shall have the right, at its sole discretion, to prosecute such infringement, or answer such declaratory judgment action, under its sole control and at its sole expense, and any recovery obtained shall be given to [Plaintiff]." (Agreement, § 7.5.)

The Agreement contains a clause specifying that "EXCEPT AS

4

1  OTHERWISE EXPRESSLY SET FORTH IN THIS AGREEMENT, NEITHER
2  [DEFENDANT] NOR [PLAINTIFF] MAKES ANY REPRESENTATIONS . . . OF ANY
3  KIND CONCERNING THE PATENT RIGHTS, EXPRESS OR IMPLIED, . . . ."
4  (Agreement, § 10.1.)  The Agreement also contains an "Entire
5  Agreement" clause:  "Except for the Confidential Agreement . . . ,
6  this Agreement constitutes the entire agreement between the parties
7  with respect to its subject matter and supercedes all prior
8  agreements or understandings between the parties relating to its
9  subject matter."  (Agreement, § 10.12.)
10      The Agreement also contains a "Governing Law" clause, which
11  specifies that the Agreement "and all disputes  arising out of or
12  related to [it], or the performance, enforcement, breach or
13  termination thereof, and any remedies relating thereto, shall be
14  construed, governed, interpreted and applied in accordance with the
15  laws of the State of California, U.S.A., without regard to conflict
16  of laws principles . . . ."  (Agreement, § 10.8.)
17      Defendant first began shipping its CYBERFLEXXX products at the
18  end of the first quarter of 2002.  Customers reported that these
19  products deformed when exposed to heat.  In March, 2002, the
20  products were taken off the market to allow examination of the
21  problem.  Plaintiff began shipping an improved second line of
22  products late in the third quarter of 2002.
23      Although the distortion problem was solved, the new products
24  became tacky and undesirable upon wetting and drying and were
25  considered too soft by some.  In February, 2003, the products were
26  again taken off the market to examine the new problems.  Around
27  this time, Defendant notified Plaintiff through Plaintiff's
28

5

president, John Chen, of infringing products in the marketplace. In response, Plaintiff assured Defendant that it would notify the infringing producers of the infringement and demand that it stop. Plaintiff did not, however, prosecute the infringing producers.

During Defendant's product development process, Mr. Chen, on behalf of Plaintiff, provided Defendant with a limited number of gel formulas. These gels were incorporated into Defendant's first and second product lines. The formulas were represented to be within the scope of the Patent Rights, but in fact were not.

Defendant then researched and developed a third line of products without input from Plaintiff. By May 5, 2005, this research and development resulted in a line of usable lures.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim will be denied unless it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Falkowski v. Imation Corp., 309 F.3d 1123, 1132 (9th Cir. 2002) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)). Dismissal of a complaint can be based on either the lack of a cognizable legal theory or the lack of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).

All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied

6

by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion.  Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  "Each averment of a pleading shall be simple, concise, and direct.  No technical forms of pleading or motions are required."  Fed. R. Civ. P. 8(e).  However, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).

## DISCUSSION

### I.  First, Seventh and Ninth Counter-Claims

Plaintiff contends that Defendant fails to state a claim for breach of contract for failure to provide formulas covered by the patent rights because Plaintiff is not obliged under the Agreement to provide formulas covered by the Patent Rights.  Rather, Plaintiff argues, its only obligation under the Agreement is not to sue Defendant for infringement of the Patent Rights.

Defendant argues that Plaintiff, by granting Defendant a license to make Licensed Products, became obliged to provide Defendants with certain formulas that would enable Defendant to make those products.  Or, if the Agreement does not expressly oblige Plaintiff to provide formulas, Defendant claims that it is ambiguous as to whether the Agreement creates such an obligation.  However, the license agreement only grants Defendant the right to use patents that Plaintiff already had -- the Patent Rights -- and

7

technology Plaintiff had already developed or might develop -- AEI Technology.  Additionally, Defendant could use these patents and this technology only to make lures with SEEPS gel.  The Agreement permits Defendant to create and sell these lures; it does not oblige Plaintiff to provide Defendant with the specific formulas necessary to make them.  Therefore, Defendant's first counter-claim does not state a claim for which relief can be granted.

Additionally, Defendant argues that, if Plaintiff was not obliged under the Agreement to provide specific formulas for making the lures, the Agreement is void for failure of consideration. However, even if Defendant never produced the lures covered by the Agreement, the exclusive right to produce such lures was a benefit that accrued to Defendant under the Agreement.  Therefore, although the Agreement did not oblige Plaintiff to provide Defendant with specific formulas, the Agreement is not void for failure of consideration.  Accordingly, Defendant's first counter-claim is dismissed.

Regarding the Seventh and Ninth Counter-Claims, Plaintiff argues that Defendant has failed to state a claim for a declaratory judgment that Defendant has not breached the Agreement because of failure of consideration due to Plaintiff's failure to provide formulas that either were within the scope of the Patent Rights or that worked for their intended purposes.  Plaintiff also argues that Defendant has failed to state a claim for a declaratory judgment that Defendant has not breached the Agreement because Defendant's performance is excused due to Plaintiff's failure to provide formulas that were either within the scope of the Patent

8

Rights or appropriate for their intended use.

As discussed above, the Agreement did not oblige Plaintiff to provide Defendant with any specific formulas. The Agreement only obliges Plaintiff to permit Defendant to use certain patents and technology that Plaintiff had developed or might develop. Therefore, Defendant's seventh and ninth counter-claims do not state claims for which relief can be granted. Accordingly, Defendant's seventh and ninth counter-claims are dismissed. Defendant does not proffer any amendment to the first, seventh, or ninth counter-claims that would remedy the deficiencies described but, in an abundance of caution, the Court grants it leave to amend to attempt to do so.

II.  Second, Eighth and Tenth Counter-Claims

Plaintiff contends that Defendant fails to state a claim for breach of contract for failure to maintain exclusivity. Plaintiff argues that the unambiguous terms of the Agreement do not oblige Plaintiff to maintain exclusivity. Defendant argues that the Agreement does so expressly. The Agreement permits Plaintiff to maintain exclusivity. However, the Agreement provides only that Plaintiff has the option of maintaining exclusivity, not the obligation. Therefore, the Agreement does not expressly oblige Plaintiff to maintain exclusivity.

Defendant also alleges that Plaintiff made a collateral agreement to maintain exclusivity. Defendant argues that because assuming such an obligation is not inconsistent with the language of the Agreement, the parole evidence rule does not bar any of its counter-claims based on allegations of such a collateral agreement.

However, when parties have agreed that a writing is a complete and final embodiment of their agreement, parole evidence cannot be used to add to or vary its terms. <u>A. Kemp Fisheries, Inc. v. Castle & Cook, Inc.</u>, 852 F.2d 493, 495 (9th Cir. 1988) (quoting <u>Masterson v. Sine</u>, 68 Cal. 2d 222, 225 (1968)). Plaintiff and Defendant have expressed their intent that the Agreement constitutes the entire agreement between the parties relating to its subject matter. (Agreement, § 10.12.)

Section seven of the Agreement specifically addresses the parties' rights and obligations in the event that the Patent Rights are infringed upon. Because section seven does not oblige Plaintiff to maintain exclusivity, any collateral agreement that Plaintiff would assume such an obligation would vary the terms of this section. Under California's parole evidence rule, Defendant will therefore not be able to prove this collateral agreement. Because proof of such an agreement is necessary to Defendant's second counter-claim, it does not state a claim for which relief can be granted. Accordingly, Defendant's second counter-claim is dismissed.

Plaintiff also contends that Defendant's eighth counter-claim, declaratory judgment of no breach due to failure of consideration for failure to maintain exclusivity, and tenth counter-claim, declaratory judgment of no breach because performance is excused due to prior material breach for failure to maintain exclusivity, fail to state a claim for which relief can be granted. Plaintiff argues that, because it is not obliged under the Agreement to maintain exclusivity, its failure to prosecute infringing users

10

resulted in neither a failure of consideration nor a material breach on its part.

As discussed above, Plaintiff is not obliged under the Agreement to maintain exclusivity. Therefore, the fact that Plaintiff did not prosecute infringing users did not result in a failure of consideration or a material breach. Accordingly, Defendant's eighth and tenth counter-claims do not state claims for which relief can be granted. Defendant's second, eighth and tenth counter-claims are dismissed. Defendant does not proffer any amendment to the second, eighth, or tenth counter-claims that would remedy the deficiencies described, but in an abundance of caution, the Court grants it leave to amend to attempt to do so.

III. Fourth Counter-Claim

Plaintiff argues that Defendant's claim for fraud in the inducement must be dismissed for failure to state a claim. Specifically, Plaintiff argues that Defendant does not and cannot plead an essential element of the claim: justifiable reliance on Plaintiff's alleged misrepresentations.

Reliance on representations that contradict clear and unambiguous terms of an agreement is unjustified as a matter of law. <u>Hadland v. NN Investors Life Ins. Co.</u>, 24 Cal. App. 4th 1578, 1588 (1994). Defendant alleges that Mr. Chen represented that Plaintiff would maintain exclusivity and that it had been enforcing and would continue to enforce its patents. (Counter-Complaint, ¶ 64, allegations 2 and 4.) However, as discussed above, the Agreement contradicts any such representation by providing that Plaintiff had the option to maintain exclusivity at its sole

11

discretion.  Therefore, Defendant's reliance on any contrary representation is unjustified as a matter of law.  Accordingly, Defendant cannot state a claim for fraud in the inducement based on allegations that Plaintiff represented that it would maintain exclusivity.

Defendant also alleges that Mr. Chen represented that the patents Plaintiff was licensing would provide Defendant with what it needed for its line of lures. (Counter-Complaint, ¶ 64, allegation 1.)  However, the Agreement contradicts any such representation by stating that, except as provided in the Agreement, Plaintiff makes no representations concerning the patent rights.  (Agreement § 10.1.)  Therefore, Defendant's reliance on any such representation is unjustified as a matter of law.  Accordingly, Defendant cannot state a claim for fraud in the inducement based on allegations that Plaintiff represented that the licensed patents would provide Defendant with what it needed for its lures.

Defendant argues that a contract provision that provides that no party is relying on any extrinsic representations does not prohibit a party from introducing parole evidence to prove fraudulent misrepresentation.  Defendant relies on <u>Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Development Corp.</u>, 32 Cal. App. 4th 985, 994-95 (1995) for this proposition.  However, the Agreement does not contain a general disclaimer that no party has relied on any representations of any kind outside of the Agreement, as was the case in <u>Ron Greenspan</u>.  Rather, the provision in the Agreement specifies that all representations concerning the patent

12

rights are expressed in the Agreement.  Therefore, <u>Ron Greenspan</u> is distinguishable.

Defendant makes one allegation which states a claim for fraudulent inducement: that Mr. Chen represented that he would maintain the confidentiality of Defendant's proprietary information. (Counter-Complaint, ¶ 64, allegation 3.)  However, Plaintiff also argues that Defendant's fourth counter-claim should be dismissed for failure to plead fraud with particularity.

Defendant's fraudulent inducement claim sounds in fraud and so must be plead with the particularity required by Federal Rule of Civil Procedure 9(b).  <u>Vess v. Ciba-Geigy Corp.</u>, 317 F.3d 1097, 1106 (9th Cir. 2002).  To satisfy this particularity requirement, a party alleging fraud must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.  <u>Edwards v. Marin Park, Inc.</u>, 356 F.3d 1058, 1066 (9th Cir. 2004).  Additionally, the party must include an explanation as to why the statement was untrue or misleading when made.  <u>Yourish v. California Amplifier</u>, 191 F.3d 983, 993 (9th Cir. 2004).

Defendant concedes that it has failed to state when, where and to whom Mr. Chen allegedly represented that he would maintain the confidentiality of Defendant's proprietary information and the specific contents of this representation.  Furthermore, Defendant seems to concede that it has not provided an explanation as to why this representation was untrue or misleading when made.  Because all of these allegations are required to plead fraud, Defendant's fourth counter-claim is dismissed.  Defendant is granted leave to

13

amend this counter-claim to allege when, where, and to whom Mr. Chen made this representation, the specific contents of this representation, and an explanation as to why this representation was untrue when made.

IV. Fifth Counter-Claim

Defendant bases its claim of negligent misrepresentation on the same four alleged misrepresentations that form the basis of its claim for fraud in the inducement. The rulings regarding these misrepresentations apply to this claim as well. Accordingly, Defendant was unjustified as a matter of law in relying on representations by Plaintiff that it would maintain exclusivity and that the patents would provide Defendant with all that it needed for its line of lures.

Plaintiff argues that Defendant fails to plead its negligent misrepresentation claim with sufficient particularity. Claims for negligent misrepresentation must meet the heightened pleading requirement of Rule 9(b). Glen Holly Entm't, Inc. v. Tektronix, Inc., 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999). For the one alleged misrepresentation upon which Defendant can base this claim, Defendant fails to specify when, where or to whom it was made or its specific content. Therefore, Defendant's fifth counter-claim is not plead with sufficient specificity and is dismissed. Defendant is granted leave to amend this counter-claim to allege when, where and to whom this misrepresentation was made and its specific content.

V. Sixth Counter-Claim

Plaintiff argues that Defendant has failed to state a claim

14

for fraud in the execution of the contract.  Under California law, a claim for fraud in the execution addresses the inception of the agreement, claiming that the promissor is deceived as to the nature of his act and actually does not know what he is signing or does not intend to enter into a contract at all.  Rosenthal v. Great Western Fin. Sec. Corp., 14 Cal. 4th 394, 415 (1996).

Defendant alleges that it was deceived as to whether the Agreement would provide everything it needed to make its lures and therefore it was deceived into signing something other than what it thought it was signing.  However, Defendant does not allege that it was deceived as to the nature of its act or did not know it was entering into a contract when Mr. Shelton executed the Agreement, as required for a claim for fraud in the execution.  Rather, Defendant seems to concede that it knew that it was entering into a contract.  Therefore, Defendant fails to state a claim for fraud in the execution and its sixth counter-claim is dismissed.  Defendant may amend its counter-complaint if it can adequately state a claim for fraud in the execution.

However, Defendant's claim for fraud in the execution appears to be more properly characterized as another basis for a claim of fraud in the inducement.  Specifically, Defendant appears to contend that it relied on Plaintiff's misrepresentation that Plaintiff had provided Defendant with all of Plaintiff's patents that would be applicable to Defendant's line of lures.  Therefore, Defendant may amend its fourth and fifth counter-claims to plead another basis for claims of fraud and misrepresentation.  As discussed above, such claims for fraud and misrepresentation must

15

be plead with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.

VI. Twelfth Counter-Claim

Plaintiff argues that Defendant's counter-claim for unjust enrichment is barred as a matter of law because, under California law, unjust enrichment claims cannot be made where there is an express contract that defines the parties' rights.  Plaintiff relies on California Med. Ass'n, Inc. v. Aetna U.S. Healthcare of California, 94 Cal. App. 4th 151, 172 (2001) for this proposition. However, another California court of appeal case has held that within the same action a party may seek rescission and, alternatively, damages based upon contract in the event rescission cannot be obtained.  Walters v. Marler, 83 Cal. App. 3d 1, 16 (1978).

California appellate courts may be split on whether contract and quasi-contract claims may be alleged in the same complaint. However, Federal Rule of Civil Procedure 8(e)(2) provides, "A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. . . .  A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds."  Under this Rule, Defendant may plead alternative theories.  Therefore, the motion to dismiss this claim is denied.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to dismiss Defendant's first, second, fourth, fifth, sixth, seventh, eight,

16

ninth and tenth counter-claims is GRANTED and those claims are dismissed with leave to amend.  Plaintiff's motion to dismiss Defendant's twelfth counter-claim is DENIED.

Defendant may amend its counter-complaint to remedy the deficiencies in the claims that it had attempted to plead in its first counter-complaint.  However, if Defendant wishes to plead counter-claims based on new theories it must move for leave to file an amended counter-complaint, pursuant to Rule 15 of the Federal Rules of Civil Procedure.  Before moving for such leave, Defendant shall confer with Plaintiff to seek a stipulation to include such new theories in its amended counter-claims, subject to another motion to dismiss.  Defendant shall file its amended counter-complaint no later than November 23, 2007.

If the related South Carolina case is transferred to the Northern District of California, Defendant may include in its amended counter-complaint any claims alleged that case that have not yet been alleged in the case at bar.  This will enable Plaintiff to move at once to dismiss Defendant's amended counter-claims as well as Defendant's claims from the South Carolina case.

IT IS SO ORDERED.

Dated:  11/8/06

CLAUDIA WILKEN
United States District Judge

17