United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

APPLIED ELASTOMERICS, INCORPORATED, a California corporation,

Plaintiff,

v.

Z-MAN FISHING PRODUCTS, INCORPORATED, a South Carolina corporation,

Defendant.

_______________________________________/

AND RELATED COUNTERCLAIMS.

_______________________________________/

No. C 06-2469 CW

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR LEAVE TO AMEND ANSWER AND GRANTING PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS

Defendant Z-Man Fishing Products, Inc. moves for leave to amend its answer to add three additional affirmative defenses and to correct errors made in its original pleading. Plaintiff Applied Elastomerics, Inc. opposes this motion and, in a separate motion, moves to dismiss Defendant's two counterclaims. Defendant opposes Plaintiff's motion in part, limiting the factual predicate of its first counterclaim and agreeing to dismiss its second counterclaim. The matter was heard on March 2, 2006. Having considered all of

United States District Court
For the Northern District of California

the papers filed by the parties and oral argument, the Court grants in part Defendant's motion for leave to amend its answer and denies it in part; Plaintiff's motion to dismiss is granted.

BACKGROUND

As explained in the Court's prior orders, Plaintiff invents and patents certain chemical compositions, composites and articles made from these compositions and composites. Many of its patents concern gel polymers. Plaintiff commercializes its technology by licensing its patents, proprietary technology and know-how to third parties. Plaintiff's president, John Chen, handles all of the business aspects of commercializing the technology he invents and develops. Defendant develops and manufactures fishing lure components and fishing lures for major lure manufacturers. In 2001, Mike Shelton, Defendant's Vice President of Marketing and Sales and Director of Technology, contacted Mr. Chen concerning a fishing lure product that he was trying to develop, the "superworm."[1]

On April 7, 2006, Plaintiff brought this suit for breach of contract and breach of the covenant of good faith and fair dealing. Defendant filed a motion to dismiss for lack of personal jurisdiction, which the Court denied. On July 13, 2006, Defendant filed a complaint against Plaintiff in the District of South Carolina; that case has been transferred to this district.[2]

[1]The factual background of this case is described in the Court's August 10, 2006 and November 8, 2006 orders.

[2]On February 27, 2007, the Court related and consolidated the transferred case, assigned Case No. C. 07-0011, to this case.

Defendant filed its answer and twelve counterclaims, alleging (1) breach of the license agreement for failure to provide formulations covered by Plaintiff's patent rights; (2) breach of the license agreement for failure to maintain exclusivity; (3) breach of the covenant of good faith and fair dealing; (4) fraud in the inducement; (5) negligent misrepresentations; (6) fraud in the execution; (7) declaratory judgment of no breach of contract by Defendant, due to lack of consideration resulting from Plaintiff's failure to provide Defendant with a formula within the scope of Plaintiff's patent rights and/or that worked for its intended purpose; (8) declaratory judgment of no breach of contract by Defendant, due to lack of consideration resulting from Plaintiff's failure to maintain exclusivity; (9) declaratory judgment of no breach of contract by Defendant because Defendant's performance under the license agreement is excused by Plaintiff's prior material breach of the license agreement in failing to provide Defendant with a formula within Plaintiff's patent rights and/or that was appropriate for its intended use; (10) declaratory judgment of no breach of contract by Defendant because Defendant's performance under the license agreement is excused by Plaintiff's prior material breach of the license agreement in failing to maintain exclusivity; (11) declaratory judgment of no breach of contract by Defendant for failure to pay royalties because of non-infringement; and (12) restitution for unjust enrichment.

Plaintiff moved to dismiss ten of the twelve counterclaims. The Court granted Plaintiff's motion in part, dismissing nine of the counterclaims with leave to amend, including Defendant's

counterclaims for fraudulent and negligent misrepresentation.

Defendant then filed its first amended counter-complaint, which contained five causes of action: (1) fraud; (2) negligent misrepresentation; (3) restitution; (4) breach of the covenant of good faith and fair dealing and (5) declaratory relief. With Plaintiff's stipulation, Defendant filed a second amended counter-complaint on January 3, 2007. The second amended counter-complaint contains only two claims for relief: breach of the covenant of good faith and fair dealing and declaratory judgment of no breach of contract for failure to pay royalties because of non-infringement.

Plaintiff did not stipulate to allow Defendant to file an amended answer. According to Plaintiff, the affirmative defenses Defendant sought to add were futile. On January 4, 2007, Defendant moved for leave to file its amended answer. The next day, Plaintiff filed its motion to dismiss Defendant's remaining two counterclaims.

## LEGAL STANDARD

### I. Motion for Leave to Amend

Federal Rule of Civil Procedure 15(a) provides that leave of the court allowing a party to amend its pleading "shall be freely given when justice so requires." Leave to amend lies within the sound discretion of the trial court, which discretion "must be guided by the underlying purpose of Rule 15--to facilitate decisions on the merits rather than on the pleadings or technicalities." United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981). Thus, Rule 15's policy of favoring amendments to pleadings should be applied with "extreme liberality." Id.; see

also DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987).

Four factors are relevant to whether a motion for leave to amend should be denied: undue delay, bad faith or dilatory motive, futility of amendment, and prejudice to the opposing party. See Foman v. Davis, 371 U.S. 178, 182 (1962). However, these factors are not of equal weight; specifically, delay alone is insufficient ground for denying leave to amend. See Webb, 655 F.2d at 980. Futility of amendment, by contrast, can alone justify the denial of a motion for leave to amend. See Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995). A proposed amendment is futile "if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988). In other words, if the proposed amended complaint cannot withstand a motion to dismiss, it should be denied as futile. See id. (citing 3 J. Moore, Moore's Federal Practice § 15.08[4] (2d ed. 1974)).

II. Motion to Dismiss

A motion to dismiss for failure to state a claim will be denied unless it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Falkowski v. Imation Corp., 309 F.3d 1123, 1132 (9th Cir. 2002) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)). Dismissal of a complaint can be based on either the lack of a cognizable legal theory or the lack of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).

United States District Court
For the Northern District of California

All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

A complaint must contain a “short and plain statement of the claim showing that the pleader is entitled to relief.” Fed. R. Civ. P. 8(a). “Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required.” Fed. R. Civ. P. 8(e). However, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).

DISCUSSION

I. Defendant's Motion for Leave to Amend

Defendant states that its proposed amended answer makes "technical corrections" to its earlier answer, designed to clarify that the parties did not enter into the contract that forms the basis of Plaintiff's complaint, and adds three additional affirmative defenses: fraud, negligent misrepresentation and mistake. Plaintiff challenges only the three affirmative defenses that Defendant seeks to add. According to Plaintiff, all three of these affirmative defenses are futile and, thus, leave to amend should be denied.

A. Fraud

In order to state an affirmative defense for fraud, Defendant must plead with specificity the following elements: misrepresentation, scienter, intent to defraud, justifiable reliance and resulting damage. See, e.g., Lazar v. Super. Ct., 12 Cal. 4th 631, 638 (1996). Defendant claims that it alleges each of

these elements with the requisite detail. According to the proposed amended answer, Mr. Shelton told Mr. Chen that Defendant wanted all of Plaintiff's relevant patents licensed to it exclusively. Mr. Chen told him that the license agreement included all of Plaintiff's patents that would be relevant to the fishing lures. The falsity of this representation was allegedly demonstrated when Mr. Chen later informed Mr. Shelton that the patents covered by the License Agreement included only "the Cadillac of the product" but did not include the "Volkswagen." Defendant alleges that it justifiably relied on Mr. Chen's false statement that the license agreement covered all relevant patents and that it was damaged as a result of Plaintiff's fraudulent assertion.

Plaintiff responds that Defendant's affirmative defense closely resembles Defendant's fraudulent inducement counterclaim, which the Court dismissed. The Court previously found that the license agreement is fully integrated and that the agreement explicitly states that the parties have not made any representation or warranties other than those set forth in the agreement. Section 10.1 of the agreement provides:

> EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS AGREEMENT, NEITHER COMPANY NOR AEI MAKES ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND CONCERNING THE PATENT RIGHTS, EXPRESS OR IMPLIED. . . . Specifically, and not to limit the foregoing, AEI makes no warranty or representation (i) regarding the validity or scope of the Patent Rights, (ii) that the exploitation of the Patent Rights or any Licensed Product will not infringe any patents or other intellectual property rights of AEI or of a third party, and (iii) that AEI or a third party is not currently infringing or will not infringe the Patent Rights.

License Agreement, § 10.1. Therefore, the Court found that

Defendant's reliance that the patents Plaintiff licensed to it would provide what Defendant needed for its superworm fishing lure was "unjustified as a matter of law" because the agreement contradicts any such representation. November 8, 2006 Order at 12; see also Bank of the West v. Valley Nat'l Bank, 41 F.3d 471, 477 (9th Cir. 1994) ("the clear and explicit language of the contract prevented justifiable reliance"). Plaintiff argues that reliance on the purported misrepresentation that the license agreement contained "all" relevant patents similarly is unjustified as a matter of law. It contends that this alleged misrepresentation contradicts the unambiguous statement that Plaintiff made no representation concerning the Patent Rights or the scope of the Patent Rights.

As Defendant notes, however, the license agreement, in section 1.7(a), defines "Patent Rights" as "the United States and international patents listed on Schedule A" and "other United States and international patents in which the claims of such patents read on the Licensed Products and are acquired or otherwise owned by AEI during the term of this Agreement in which the Valid Claims of said patents read on the Licensed Product." According to Defendant's proposed amended answer, a purported "Volkswagen" patent was not included in Schedule A and is not part of the Patent Rights. Unlike its prior allegation that Plaintiff misrepresented that its patents would provide what Defendant needed for its superworm fishing lure, Defendant's allegation that Plaintiff misrepresented that it was getting all of Plaintiff's relevant patents does not contradict any unambiguous statement in the

United States District Court
For the Northern District of California

agreement. Therefore, Defendant's reliance is not, as a matter of law, unjustified. Because it would not be futile, the Court grants Defendant leave to amend its answer to add its fraud affirmative defense.

B. Negligent Misrepresentation

According to the proposed amended answer, Mr. Chen made the following three misrepresentations: (1) that the license agreement included all of Plaintiff's patents that were relevant to the development of the superworm fishing lure; (2) that the sample gels he provided were covered by the Patent Rights reflected in the draft license agreement; and (3) that "subsequent Plaintiff's technology, i.e., material in the form of gel formulation, he forwarded to Defendant was covered by the Patent Rights."

Plaintiff argues that, because negligent misrepresentation, like fraudulent misrepresentation, includes justifiable reliance as one of its elements, Defendant's negligent misrepresentation affirmative defense fails for the same reason as its fraudulent misrepresentation affirmative defense. See Walters v. Marler, 83 Cal. App. 3d 1, 17 (1978), disapproved on other grounds in Gray v. Don Miller & Associates, Inc., 35 Cal.3d 498 (1984). As discussed above, the Court did not find that Defendant's fraudulent misrepresentation affirmative defense failed as a matter of law. Nor does the Court find that the alleged misrepresentation concerning whether the subsequent technology was covered by the patent rights expressly contradicts any provision in the agreement; however, it is not clear what the reliance is and what the damage to Defendant would be. But the Court does find that the alleged

misrepresentation concerning whether the sample gels were covered by the patent rights expressly contradicts the unambiguous provision in the agreement that Plaintiff made no representation concerning the Patent Rights or the scope of the Patent Rights. Therefore, Defendant's reliance upon that alleged misrepresentation is unjustified as a matter of law and Defendant's affirmative defense based on that ground is futile.

Claims for negligent misrepresentation must meet the heightened pleading requirement of Rule 9(b). See November 8, 2006 Order at 14 (citing Glen Holly Entm't, Inc. v. Tektronix, Inc., 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999)). Defendant's allegations concerning negligent misrepresentation are not plead with particularity. The first ground on which Defendant bases its negligent misrepresentation defense can be plead with the same facts as its fraud affirmative defense; Defendant may also include its subsequent technology theory as part of its negligent misrepresentation defense if it can do so with particularity.

C. Mistake

According to the proposed amended answer, in late July, 2001, Plaintiff sent a revised license agreement to Mr. Shelton for his signature. Mr. Shelton signed the document and, on July, 25, 2001, sent it to Mr. Chen with the express understanding and intention that (1) the license agreement provided Defendant with all of Plaintiff's relevant patents and technology that could be used in the fishing lures, (2) the samples that had been provided were covered by Plaintiff's Patent Rights and (3) lower minimum royalty amounts would be agreed upon when customer orders for the product

United States District Court
For the Northern District of California

were received. In a transmittal memorandum sent with the signed license agreement, Mr. Shelton attached the sales forecast and royalty numbers and noted that the license agreement covers any and all fishing lures made from Plaintiff's patent formula. Mr. Shelton asked Mr. Chen to advise Defendant if that statement was incorrect.

Based on these and additional facts, Defendant contends that the license agreement, so far as it was entered into, must be revised or rescinded due to a mistake.[3] Plaintiff responds that Defendant's affirmative defense is not plead with particularity and does not allege a legally cognizable mistake.[4]

Federal Rule of Civil Procedure 9 provides, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." As Moore's Federal Practice explains:

> In pleading mistake, the circumstances of the error must be set forth with the same high degree of specificity. A good averment of mistake should include:
>
> 1. the act or writing intended;
> 2. the act or writing done;
> 3. the cause of the mistake; and
> 4. whether the mistake was mutual, unilateral, or merely that of a scrivener.

---

[3]Plaintiff notes that, although Defendant discusses revision and cites the California Civil Code governing when a contract may be revised, Defendant's affirmative defense itself seeks only rescission. See Defendant's Proposed Amended Answer at ¶ 50.

[4]Plaintiff also argues that Defendant cannot meet the requirements for rescission under California Civil Code Sections 1691 and 1693. Whether Defendant can meet the requirements for rescission is not at issue in determining whether an amendment is futile; what is at issue is whether the allegations would withstand a motion to dismiss.

United States District Court
For the Northern District of California

Cagan v. Intervest Midwest Real Estate Corp., 774 F. Supp. 1089, 1097 (N.D. Ill. 1991) (quoting Moore's Federal Practice ¶ 9.03[1], at 9-26 (2d ed. 1990) (footnote omitted)).

Defendant does not dispute that mistake must be plead with particularity; rather, it argues that it has done so. It has not. Therefore, Defendant's motion for leave to amend to include this affirmative defense is denied for failure to plead with the required particularity.

Further, based on its non-specific pleading, Defendant does not plead a legally cognizable mistake:

> California Civil Code § 1689(b) provides for unilateral rescission of a contract “[i]f the consent of the party rescinding . . . was given by mistake.” Plaintiffs allege that they were mistaken as to whether the contract required the University to procure royalties, and that this was a mistake of material fact. However, under California law, “[a] party is bound, even if he misunderstood the terms of a contract and actually had a different, undisclosed intention.” The fact that plaintiffs were “simply mistaken” in their belief that the contract contained a royalty requirement does not serve to release them from their contract.

Kucharczyk v. Regents of University of California, 946 F. Supp. 1419, 1433 (N.D. Cal. 1996) (inner citations omitted; alterations in original); see also Hedging Concepts, Inc. v. First Alliance Mortgage Co., 41 Cal. App. 4th 1410, 1420-22 (1996) (unilateral, subjective misinterpretation of contract is not a "mistake" constituting grounds for rescission).

II. Plaintiff's Motion to Dismiss Counterclaims

As noted above, Defendant's second amended counterclaim includes only two causes of action: breach of the covenant of good faith and fair dealing and declaratory relief. Plaintiff moves to dismiss both causes of action.

United States District Court
For the Northern District of California

A. First Counterclaim

Defendant's first counterclaim alleges that Plaintiff breached the implied covenant of good faith and fair dealing by: (1) failing to conduct its test of infringing products in a reasonable fashion or to maintain exclusivity of its patent; (2) attempting to license other patents to Defendant that it had represented already to be within the license agreement; (3) failing to provide Defendant with Plaintiff's technology that was covered by Plaintiff's Patent Rights; and (4) attempting to extract additional royalty payments not warranted under the license agreement by claiming infringement where none was present and by demanding royalties in excess of the agreed amount. Defendant states that it limits its breach of the covenant claim to its first two theories. Plaintiff responds that, even with this limitation, Defendant's claim fails and should be dismissed without leave to amend.

The implied covenant of good faith and fair dealing supplements "the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." Waller v. Truck Ins. Exchange, Inc., 11 Cal. 4th 1, 36 (1995). The California Supreme Court explains, "Absent that contractual right, however, the implied covenant has nothing upon which to act as a supplement, and 'should not be endowed with an existence independent of its contractual underpinnings.'" Id. (quoting Love v. Fire Ins. Exchange, 221 Cal. App. 3d 1136, 1153 (1990)); see also Guz v. Bechtel Nat. Inc., 24 Cal. 4th 317, 349-50 (2000) (the implied covenant of good faith and fair dealing "cannot impose

United States District Court
For the Northern District of California

substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement"). Indeed, "courts are not at liberty to imply a covenant directly at odds with a contract's express grant of discretionary power except in those relatively rare instances when reading the provision literally would, contrary to the parties' clear intention, result in an unenforceable, illusory agreement." Third Story Music, Inc. v. Waits, 41 Cal. App. 4th 798, 808 (1995).

For an implied covenant to be imposed, “'(1) the implication must arise from the language used or it must be indispensable to effectuate the intention of the parties; (2) it must appear from the language used that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it; (3) implied covenants can only be justified on the grounds of legal necessity; (4) a promise can be implied only where it can be rightfully assumed that it would have been made if attention had been called to it; (5) there can be no implied covenant where the subject is completely covered by the contract.'” Id. at 804 (quoting Lippman v. Sears, Roebuck & Co., 44 Cal.2d 136, 142 (1955)).

1. Exclusivity

The agreement provides that Defendant "shall have the right, under its own control and at its own expense, to prosecute any third party infringement of the Patent Rights . . . . " License Agreement, § 7.2. It also provides that Plaintiff "shall have the right, at its sole discretion, to prosecute such infringement, or answer such declaratory judgment action, under its sole control and

at its sole expense. . . ." License Agreement, § 7.5.

Defendant acknowledges that, under the agreement, Plaintiff is not required to maintain the exclusivity of the licensed patents and, therefore, Plaintiff was not required to undertake any testing on potentially infringing products. See November 8, 2006 Order at 11. It states that it is not arguing that Plaintiff breached the covenant of good faith and fair dealing by failing to maintain exclusivity of the licensed patents, but rather that Plaintiff engaged in conduct that interfered with Defendant's right to enjoy the exclusivity of the licensed patents. According to the second amended counter-complaint, Defendant notified Plaintiff of potential infringement of the patents; Plaintiff stated that it would take care of it, but then unreasonably delayed the testing it said it would undertake. Had Plaintiff not promised to "take care of it," Defendant contends that it would have not have waited for Plaintiff to conduct the testing. Nonetheless, because the agreement did not require Plaintiff to test the potentially infringing products but rather gave it discretion to do so, the covenant of good faith and fair dealing cannot impose on Plaintiff the obligation of testing the products in a reasonable manner. Defendant identifies no other conduct by Plaintiff that allegedly interfered with its right to enjoy the exclusivity of the licensed patents. Therefore, to the extent that Defendant's claim for breach of implied covenant of good faith and fair dealing is based on these grounds it is dismissed. Defendant does not proffer any amendment that would remedy the deficiency of its claim, but, in an abundance of caution, the Court once again grants it leave to amend

to attempt to do so.

2. Additional Patents

As discussed above, Defendant alleges that, although Plaintiff stated that the license agreement covered all patents relevant to the superworm fishing lure, Plaintiff later informed Defendant that it had licensed only the "Cadillac of the product" and not the "Volkswagen." Plaintiff sought an additional $10,000 to license additional patents. Defendant does not make clear which patent is the "Volkswagen."

In its opposition, Defendant states that its allegation that Plaintiff attempted to license patents to Defendant that Plaintiff represented already to be within the license agreement is the basis of its affirmative defenses, and that its counterclaim for breach of the implied covenant of good faith and fair dealing is based on its allegation that, if Plaintiff did license all of its pertinent patents to Defendant, Plaintiff's insistence on a $10,000 payment to add the "Volkswagen" patent interfered with Defendant's right to the exclusivity of all of the patents that Plaintiff contends that it licensed to Defendant.

Plaintiff responds that this theory fails because it is based on facts not included in the counter-complaint, contradicts the factual allegations in the counter-complaint and negates Defendant's fraud affirmative defense.[5] Defendant alleges in its counter-complaint that Plaintiff has represented that additional patents, the "Non-Fishing Lure Patents," were included in the

[5]As the Court found in its prior order, "Defendant may plead alternative theories." November 8, 2006 Order at 16.

United States District Court
For the Northern District of California

license agreement. Second Amended Counter-Complaint, ¶ 30. Nonetheless, Defendant does not allege that any of the Non-Fishing Lure Patents is the "Volkswagen" patent. For purposes of a Rule 12(b)(6) motion, "review is limited to the contents of the complaint." Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir. 1994). Defendant's argument that it states a claim for breach of implied covenant of good faith and fair dealing is based on allegations not included in its counter-complaint. For this reason, the Court dismisses this claim. Defendant is granted to leave to amend its counter-complaint to include these allegations if it can do so truthfully. The Court dismisses with prejudice Defendant's breach of the covenant claim to the extent it is based on an allegation that Plaintiff attempted to license patents to Defendant that Plaintiff had represented already to be within the license agreement, a theory Defendant has abandoned.

B. Second Counterclaim

Defendant's second counterclaim seeks declaratory relief. Defendant agrees to the dismissal of this claim. Nonetheless, it addresses at length whether a contract was formed and, if so, what it entailed. Plaintiff responds, requesting that the Court treat its motion to dismiss the declaratory judgment claim as a motion for judgment on the pleadings and decide the underlying issues of contract formation and the applicable minimum royalty schedule. The Court will not do so. Defendants' second counterclaim for declaratory relief is dismissed with prejudice.

CONCLUSION

For the foregoing reasons, Defendant's Motion for Leave to

File an Amended Answer (Docket No. 76) is GRANTED IN PART and DENIED IN PART.  The Court grants Defendant leave to amend its answer to correct errors made in its original pleading and to include its affirmative defense of fraud.  But the Court denies Defendant leave to amend its answer to include an affirmative defense based on the alleged misrepresentation that the sample gels were covered by the patent rights.  Defendant may amend its negligent misrepresentation affirmative defense to allege the same facts that support its fraud affirmative defense and may try to amend its negligent misrepresentation affirmative defense concerning subsequent technology and its mistake affirmative defense, but only if it can do so with particularity and within the bounds of Rule 11.  Plaintiff's Motion to Dismiss Counterclaims (Docket No. 78) is GRANTED.  Defendant is granted leave to amend its first counterclaim consistent with this order; its second counterclaim, however, is dismissed without leave to amend. Defendant must submit its third amended counterclaims and its amended answer within ten days from the date of this order.  As discussed at the hearing, Defendant shall include in this pleading any viable claims it wishes to pursue from the transferred South Carolina action.

    IT IS SO ORDERED.

Dated: 3/5/07

CLAUDIA WILKEN
United States District Judge