IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLIED ELASTOMERICS, INCORPORATED, a California corporation,<br><br>      Plaintiff,<br><br>  v.<br><br>Z-MAN FISHING PRODUCTS, INCORPORATED, a South Carolina corporation,<br><br>      Defendant.<br>_____/<br><br>AND RELATED COUNTERCLAIMS.<br>_____/ | No. C 06-2469 CW<br><br>ORDER GRANTING IN PART DEFENDANT'S MOTION TO MODIFY THE COURT'S INITIAL CASE MANAGEMENT ORDER AND DENYING IT IN PART |

    Defendant Z-Man Fishing Products, Inc. moves for an order continuing by sixty days the dates set in the Court's November, 2007 case management order. Plaintiff Applied Elastomerics, Inc. opposes the motion. The matter was decided on the papers. Having considered all of the parties' papers, the Court grants in part Defendant's motion. The Court will continue the discovery cut-off date by sixty days, but it will not continue the trial.

BACKGROUND

On April 7, 2006, Plaintiff brought this suit for breach of contract and breach of the covenant of good faith and fair dealing.[1] In response, Defendant filed twelve counterclaims. Defendant also filed a complaint against Plaintiff in the District of South Carolina, where Defendant and its operations are located. That complaint contained twenty-one claims and included some causes of action that Defendant raised as counterclaims in this action; it also contained patent-related causes of action. Plaintiff moved to transfer the South Carolina action to this Court.

On November 3, 2006, before the South Carolina court had ruled on Plaintiff's motion to transfer, the Court held a hearing on Plaintiff's motion to dismiss ten of Defendant's twelve counterclaims. At the same time, a case management conference was held: the Court set June 4, 2007 as the fact discovery cut-off date and November 13, 2007 as the date a ten-day trial would begin. The Court explained that, if the South Carolina case were transferred to this Court, it would relate and consolidate the cases.

On December 27, 2006, the South Carolina court transferred the South Carolina case to this Court. That case was related to and consolidated with this case.

In February, 2007, Defendant contacted Plaintiff to discuss scheduling a deposition of Plaintiff's president John Chen. Plaintiff indicated that it would object to any questioning of Mr. Chen as it related to the patent claims in the transferred South

---

[1] The factual background of this case is described in the Court's August 10, 2006 and November 8, 2006 orders.

2

Carolina action until this Court had determined that those claims were facially valid. Defendant states that, given Plaintiff's position, it decided to wait to depose Mr. Chen until after the validity of the patent claims was resolved.

On March 2, 2007, the Court held a hearing on Plaintiff's second motion to dismiss Defendant's counterclaims and Defendant's motion to amend its answer. In its March 5, 2007 order concerning those motions, the Court directed Defendant to include in its third amended counter-complaint any viable claims it wished to pursue from the South Carolina action.

Defendant filed its third amended counter-complaint, which included several patent claims from the South Carolina action, including co-inventorship claims. In light of Plaintiff's lead counsel's unavailability due to health issues, Defendant offered Plaintiff additional time to respond to the counter-complaint. Defendant states that it refrained from moving forward with Mr. Chen's deposition at that time to give Plaintiff's new lead counsel time to familiarize herself with the case.

On April 12, 2007, Plaintiff filed its third motion to dismiss Defendant's counterclaims.

In May, Defendant propounded requests for admissions, requests for production and interrogatories relating to its co-inventorship claim. Mr. Chen's deposition was noticed for May 23, 2007, but rescheduled to June 5, 2007, the day after the close of discovery, pursuant to a stipulation of the parties. That month, Defendant contacted Plaintiff concerning a possible stipulation extending the discovery cut-off and trial date. According to Plaintiff,

3

Defendant indicated that it wanted a continuance in light of the transfer of the South Carolina case.  When pressed, however, Defendant conceded that the only claim that might require further discovery was the correction of inventorship claim.  Plaintiff states that it asked Defendant what additional discovery would be needed on the co-inventorship claim, but Defendant refused to explain what additional discovery would be needed.  In light of Defendant's refusal to explain what additional discovery would necessitate a continuance, Plaintiff informed Defendant that it would not stipulate to a continuance.  Later that month, Defendant again asked Plaintiff to agree to a continuance, stating that it wanted to interview two individuals who might have relevant information concerning its correction of inventorship claims.  Plaintiff again refused.

On June 1, 2007, the Court granted in part Plaintiff's motion to dismiss and denied it in part.  Plaintiff had issued a covenant not to sue Defendant, which removed jurisdiction over Defendant's infringement and invalidity counterclaims.  The Court concluded that it had no jurisdiction over the disputed inventorship of a pending patent application and dismissed Defendant's claim concerning Patent Application No. 10/199,362.  Defendant was left with the following three counterclaims: (1) breach of the implied covenant of good faith and fair dealing; (2) co-inventorship with respect to three issued patents; and (3) restitution.  The Court stated that Defendant may seek to amend its complaint if a patent issued based on the then-pending patent application.  A patent did issue.  But, as explained below, Defendant did not seek leave from

4

the Court to amend its complaint.

On June 4, 2007, Defendant filed this motion for a continuance. Two days later, Defendant asked Plaintiff to stipulate to the filing of a fourth amended counter-complaint, enabling it to add its claim concerning the recently issued patent. Plaintiff agreed to stipulate to Defendant amending its counter-complaint if Defendant would withdraw this motion. Defendant would not. And Plaintiff refused to stipulate.

On July 13, 2007, instead of moving to amend its complaint as the Court stated it may, Defendant filed a new action concerning the newly issued patent. Defendant claims that it did so, not as an effort to delay this matter, but rather to have its claim concerning the newly issued patent heard with its existing counterclaims in the quickest and least expensive manner possible.

Two days later, eleven days after the discovery cut-off, Plaintiff filed its answer to Defendant's third amended counter-complaint. According to Plaintiff, however, Defendant long ago had an idea what its answer would entail and what affirmative defenses it would raise. In September, 2006, Plaintiff had filed its answer in the South Carolina action. Plaintiff claims that its answer in this action closely mirrors the answer it filed in the South Carolina action.

## LEGAL STANDARD

Federal Rule of Civil Procedure 16(b) provides that a case management schedule can be modified upon a showing of good cause and by leave of the district judge. The Ninth Circuit has stated that the "'good cause' standard primarily considers the diligence

5

of the party seeking the amendment. The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992) (quoting Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment)).

## DISCUSSION

Defendant argues that the Court should extend by sixty days the dates set in the Court's initial case management order because good cause exists for the requested extension. It notes that this is the first "delay" it has sought in this case. According to Defendant, it has been diligent. It contends that the fact that potential additional discovery remains to be taken is understandable in light of the consolidation with the South Carolina action and Plaintiff's conduct in this litigation. It blames Plaintiff for moving to transfer the South Carolina action to this Court and claims that Plaintiff unreasonably delayed filing its answer, and its affirmative defenses, by filing multiple motions to dismiss.

In response, Plaintiff argues that Defendant has not shown good cause and rather is seeking relief from delays caused by its own litigation strategy. It blames Defendant for filing the South Carolina action in the first place. It claims that this is a simple contract case, which Defendant has attempted to expand and confuse by filing dozens of counterclaims and four counter-complaints. And it notes that all of its motions to dismiss were, at least in part, successful. Further, as noted above, it contends that Defendant was on notice as to the affirmative defenses it

6

would raise based on its answer in the South Carolina action.

The Court is not persuaded that Defendant was on notice of Plaintiff's affirmative defenses to its counterclaims based on Plaintiff's filing in another case. The Court finds that there is good cause to extend the discovery cut-off date by sixty days. Good cause, however, does not exist to extend the trial date. Defendant does not show that it cannot be prepared for trial on November 13, 2007.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Modify the Court's Initial Case Management Order is GRANTED IN PART and DENIED IN PART. The discovery cut-off date will be continued by sixty days. The trial, however, shall begin on November 13, 2007. The Court will relate and consolidate Defendant's new action with this case; Defendant's sole cause of action in that case will be tried along with the claims and counterclaims in this action.

IT IS SO ORDERED.

Dated: 7/13/07

_____
CLAUDIA WILKEN
United States District Judge